FILED

2024 Mar-20  PM 12:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| ELAINE FRETWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:23-cv-00398-SGC |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION[1]

The plaintiff, Elaine Fretwell, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Fretwell timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I. Background

### A. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the Step 2 impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P,

Appendix 1. If so, the claimant is disabled and the claim is granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and then proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b), 416.920(a), 416.920(b) (Step 1); 20 C.F.R. §§ 404.1520(c), 416.920(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. §§ 404.1520(e-f), 416.920(e-f) (Step 4); 20 C.F.R. §§ 404.1520(g), 416.920(g) (Step 5).

## B. The ALJ's Decision

Fretwell applied for benefits in May 2021, claiming she became disabled on March 1, 2021. (Tr. at 236). Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 107, 128). At the October 2022 hearing, Fretwell testified that she lived with her husband and 20-year-old son, both of whom work. (*Id.* at 60, 70). She stated she was unable to work because of excruciating neck and back pain and because her depression and anxiety keep her from leaving the house without her husband. (*Id.* at 61). She had difficulty interacting and socializing with others because she would become

anxious, start to sweat, want to cry, and want to leave. (*Id.* at 61, 68). Although she had anxiety her entire life, it worsened after she contracted COVID in 2020. (*Id.* at 68). She testified that she could only stand, sit, or walk for five to ten minutes at a time. (*Id.* at 62). She could not bend over to pick up an item off the ground, crawl, squat, or kneel. (*Id.* at 63). She testified that her hands were numb because of carpal tunnel syndrome, and she could not grasp or hold items. (*Id.*). She could not use a button, pick up a penny from a flat surface, or open a jar. (*Id.* at 64). According to Fretwell, she lies down for seven hours during the day. (*Id.*). During the summer, she laid by the pool, but she otherwise laid on the couch and watched television. (*Id.*at 69). She denied being able to perform household chores, such as cooking and cleaning, shopping, and socializing. (*Id.* at 64-65).

Following the hearing, the ALJ denied Fretwell's claim. (*Id.* at 30-51). The ALJ first found Fretwell met the SSA's insured requirements through June 30, 2026, and did not engage in substantial gainful activity after the alleged onset date of March 1, 2021. (*Id.* at 35). At the second step, the ALJ determined Fretwell had the following severe impairments: degenerative disk disease/osteoarthritis of the cervical spine, mild sacroiliac joint degenerative changes/sacroiliitis, seronegative rheumatoid arthritis vs. undifferentiated polyarthritis vs. fibromyalgia, a major depressive disorder, and a generalized anxiety disorder. (*Id.*). At the third step, the ALJ determined Fretwell's impairments, including her mental impairments, did not

meet or medically equal the severity of one of the Listings. (*Id.* at 37). The ALJ

found that Fretwell had (1) no more than a mild limitation in understanding,

remembering, or applying information; and (2) no more than a moderate limitation

in interacting with others, concentrating, persisting, maintaining pace, and adapting

or managing herself. (*Id.* at 37-38). Because her mental impairments did not cause

at least two marked limitations or one extreme limitation, they did not meet the

"Paragraph B" criteria. (*Id.* at 38). Nevertheless, the ALJ accounted for Fretwell's

mild and moderate mental limitations when assessing her RFC. (*Id.*).

Before proceeding to the fourth step, the ALJ found Fretwell's impairments

could reasonably be expected to cause some of her alleged symptoms but her

statements about the intensity, persistence, and limiting effects of those symptoms

were not entirely consistent with the medical evidence and other evidence in the

record. (*Id.* at 40). The ALJ determined Fretwell had the following RFC:

> [Fretwell can] occasionally lift and/or carry up to twenty pounds and
> frequently lift and/or carry up to ten pounds. She can stand and/or
> walk in combination, with normal breaks, for at least six hours during
> an eight-hour workday and sit, with normal breaks, for six to eight
> hours during an eight-hour workday. [Fretwell] can occasionally
> climb ramps and stairs and should never climb ladders, ropes, or
> scaffolds. She can frequently balance and occasionally stoop, kneel,
> crouch, and crawl. She should not be required to work in exposure to
> extreme cold, or in areas of vibration. [Fretwell] should avoid
> exposure to industrial hazards, including working at unprotected
> heights, working in close proximity to moving dangerous machinery,
> and the operation of motorized vehicles and equipment. She can
> perform simple routine tasks requiring no more than simple work-
> related decision making. She can have frequent interactions with co-

workers and supervisors and occasional interactions with members of
the general public. [Fretwell] can adapt and respond appropriately to
occasional changes in the workplace.

(*Id.* at 38-39). The ALJ found:

[Fretwell] has alleged limitations not consistent with evidence in the
record. For example, neither the objective medical evidence of record
nor the above description of activities corroborates allegations of the
claimant that she spends seven out of eight hours daily laying on the
couch. No physician has recommended such therapy and this appears
to be by preference not medical necessity. Additionally, the disabling
hand numbness she alleges is not corroborated by objective medical
evidence repeatedly including no sensory deficits and negative
findings on electrodiagnostic testing.

(*Id.* at 44). She concluded the record reflected (1) a conservative course of care

(medications and no emergency room visits, hospitalization, pain management

referral, surgery, or intensive outpatient therapy); (2) Fretwell denied symptoms

when seen for care; (3) objectively good findings during exams, including normal

motor, sensory, reflex, range of motion, and gait functions; no atrophy; no

synovitis, joint swelling, joint deformity; and (4) Fretwell had no more than

moderate mental difficulties. (*Id.*). The ALJ also observed that the physical

therapist's notes reflecting Fretwell reported 75% improvement contradicted the

hearing testimony in which she denied any benefit from physical therapy. (*Id.* at

41). She further concluded the rheumatology records were inconsistent with

limitations greater than those in Fretwell's determined RFC. (*Id.* at 42).

Consequently, the record did not support Fretwell's allegations regarding the frequency, duration, and/or severity of her limitations. (*Id.*).

The ALJ found unpersuasive the state agency consultants' opinion that Fretwell had a medium work capacity because they did not adequately consider Fretwell's combination of physical impairments. (*Id.* at 45). Instead, the ALJ found the overall evidence supported a greater limitation to light work with additional postural and other limitations. (*Id.*). The ALJ found Dr. Robert G. Haas's April 2022 assessment to be most consistent with the overall record; however, given additional evidence at the hearing level, the ALJ found Fretwell had improved mental health with medication use, resulting in milder mental health symptoms. (*Id.* at 45).

The ALJ found unpersuasive Dr. James B. Lindsey's October 2021 assessment that Fretwell suffered from moderate mental difficulties. (*Id.* at 45). While Dr. Lindsey opined that Fretwell could suffer from periods of marked impairments, that conclusion was based on Fretwell's subjective statements. (*Id.* at 45, 359). Additionally, the ALJ found marked mental difficulties were not consistent with the overall record. (*Id.* at 45).

At the fourth step, the ALJ found Fretwell could not perform any of her past relevant work as a dental hygienist because she would be required to perform work activity precluded by her RFC. (*Id.* at 46). Proceeding to the final step, the ALJ

concluded that although Fretwell was a younger individual on the alleged disability

onset date, she changed category to closely approaching advanced age. (*Id.* at 46).

She had at least a high school education but had no transferable skills to any work

within her RFC. (*Id.*). Finally, the ALJ concluded that based on Fretwell's RFC,

there were a significant number of jobs in the national economy she could perform,

including office helper, router, and sorter. (*Id.* at 47). Based on this evidence, the

ALJ ultimately concluded Fretwell was not disabled since the date she filed her

application and therefore was not entitled to benefits. (*Id.*).

The Appeals Council denied review of the ALJ's decision (*Id.* at 1-6), and

that decision became the final decision of the Commissioner. *See Fry v.*

*Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*,

150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Fretwell filed this action. (Doc.

1).

## II. Standard of Review

A court's role in reviewing claims brought under the Social Security Act is

narrow. Its review is limited to determining (1) whether there is substantial

evidence in the record as a whole to support the findings of the Commissioner and

(2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc.*

*Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc.*

*Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court defers to the factual findings

of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Analysis

Fretwell brings only one challenge to the ALJ's decision: whether she properly evaluated Fretwell's complaints of pain consistent with the Eleventh Circuit's standard. (Doc. 14 at 5). Fretwell contends the ALJ did not consider the complete medical record, overlooking those parts of the record that are consistent with Fretwell's allegations but inconsistent with the ALJ's conclusion. In response, the Commissioner argues the ALJ's determination was supported by substantial evidence.

Standing alone, Fretwell's subjective complaints of pain are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is

supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); *Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes she has an impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225−26. To discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)*. "The question is not . . . whether [the] ALJ could have reasonably credited [Fretwell's] testimony, but whether the ALJ was clearly

wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548−49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard.

Fretwell complains the ALJ did not consider the following evidence that weighs in favor of a finding she suffered from disabling pain:

- A December 2020 MRI documenting multi-level discogenic disc disease;

- A January 2021 visit to Dr. Joel Pickett, during which Fretwell complained that her pain had worsened and interfered with daily activities and Dr. Pickett noted "exquisite tenderness" over her SI joints, greater trochanters bilaterally, and both bicipital tendon insertion sites at her shoulders;

- Although Frewell once reported physical therapy had resulted in a 75% improvement, during that visit, she also complained of "fairly constant" neck pain, intermittent headaches, and radiculopathy;

- During rheumotology exams, which the ALJ concluded were objectively inconsistent with sustained significant abnormality, Fretwell consistently

complained of joint and neck pain even though she also sometimes reported improvements;

- Fretwell's report of her daily activities, which the ALJ concluded were inconsistent with debilitating pain and limitations, because the ALJ did not consider that Fretwell engaged in those activities for only a short duration.

Even if this evidence could support a finding that Fretwell suffered from disabling pain, the court cannot conclude it *requires* such a finding, nor can it conclude the ALJ failed to consider this evidence. An ALJ is not required to discuss every piece of evidence in the record. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2011). Here, she found Fretwell suffered from degenerative disc disease and mild SI joint degenerative changes, and she incorporated some postural limitations into Fretwell's RFC. Fretwell does not specifically identify those portions of the RFC she finds objectionable, instead objecting overall to the ALJ's conclusion that Fretwell could perform a range of light work. Frewtell, however, does not explain how the above evidence requires a more restrictive RFC than that assessed by the ALJ. Notably, the ALJ imposed a more restrictive RFC than assessed by the state agency physicians (*see* Tr. at 90-91, 109), indicating she accounted for at least some of Fretwell's hearing testimony.

Here, the ALJ reviewed the complete medical record to support her conclusion, and substantial evidence supports her decision. The ALJ determined

Fretwell had several underlying medical conditions but the objective medical evidence was inconsistent with the severity of her reports of disabling pain. She based this conclusion on (1) the conservative course of Fretwell's care (*see id*. at 300, 421, 447, 452, 459, 519), (2) Fretwell's reports to doctors when seen for care (*see id*. at 364, 421, 450), (3) good objective findings on medical examination (*see id.* at 301, 309, 319-20, 459), and (4) the conflict between Fretwell's hearing testimony that she spends seven of eight hours daily lying down and other reports of her daily activities (*cf. id.* at 64 with *id.* at 240-41, 247-49). (Tr. at 44). These are clearly articulated, explicit, and adequate reasons to discount Fretwell's reports about the severity of her pain.

Despite Fretwell's claims of severe pain, physicians continually recommended conservative treatment with medication, and no physician recommended surgical intervention. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting a history of conservative treatment can be a factor in evaluating a claimant's testimony); *Hantzis v. Colvin*, No. 8:13-CV-1711-T-17MAP, 2014 WL 12693222, at *3 (M.D. Fla. July 22, 2014), *aff'd sub nom. Hantzis v. Comm'r of Soc. Sec.*, 686 F. App'x 634 (11th Cir. 2017) ("In general, conservative treatment for back pain includes any treatment option that does not involve surgery."); 20 C.F.R. §§ 404.1529(c)(3)(v), (vi), 416.929(c)(3)(v), (vi) (noting a claimant's treatment and measures used to relieve pain can be considered).

Additionally, despite Fretwell's allegations of disabling pain, the record contains no evidence that a treating, examining, or reviewing physician opined Fretwell was unable to perform work activities. As the ALJ also noted, no physician recommended Fretwell spend seven of eight hours daily lying down. (Tr. at 44).

The question is not whether the ALJ could have reasonably credited Fretwell's testimony but whether she was clearly wrong to discredit it. *Werner*, 421 F. App'x at 939. She was not. Instead, the ALJ articulated in detail her findings that Fretwell's subjective complaints were inconsistent with the medical evidence of record, and substantial evidence supports her determination that Fretwell's pain was not disabling as she claimed.

## IV. Conclusion

Upon review of the administrative record and considering all Fretwell's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 20th day of March, 2024.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE